The next case for argument this morning is Seafarers Pension Plan v. Bradway. Ms. Gilden. Good morning. Please proceed, Ms. Gilden. Good morning. May it please the Court. I am Carol Gilden, and I represent the Seafarers Selection Clause in a Delaware corporation's bylaws is enforceable where its application deprives shareholders of their right to assert derivative claims under the Securities and Exchange Act of 1934. So, Ms. Gilden, before you get too far, do I take it that you concede that there would be nothing wrong with this bylaw if it were a 1933 Act claim, for example? Where there's concurrent jurisdiction between the federal and the state courts. I'm sorry, Your Honor. Actually, the sound cut out, so I did not hear the full question. Excuse me. I wondered if you're willing to concede that this bylaw is unobjectionable insofar as it might apply to a claim under the 1933 Act where there is concurrent jurisdiction in the state and federal courts. No, Your Honor. I'm not willing to concede that. That issue is not presently before the Court. The 1933 Act, as Your Honor notes, does involve concurrent jurisdiction explicitly. That is an issue that is being litigated in other courts right now, but is not present in this case. Okay. Go ahead. Can you tell us the status of the District of Delaware action involving the Boeing matter that is the one in the derivative action in the federal court there? Yes, Your Honor. All of the cases that were pending and filed in the Delaware Transfer Court have been consolidated. A lead plaintiff has been appointed, a lead counsel has been appointed, and the case is proceeding as a consolidated action. And is the bylaw being litigated there? No, it is not, Your Honor. Are there 1934 Act claims before that court? No, there are not, Your Honor. Okay. So, is this... Actually, there are a number of things to mention. I would like you, if you wouldn't mind, to discuss this exchange that occurs in the briefs about Delaware law and particularly about Section 115 and Section 109 insofar as they govern what the bylaws can say about form selection. Yes, Your Honor. So, 115, which is a form provision authorization, essentially says that what courts or what companies can do is they can enact certain form selection provisions. The legislative history to that, but the legislative... provision cannot exclude Delaware law, Delaware courts. The notes to legislative history to that provision provides that the statute is not meant in any way to foreclose a federal claim, federal jurisdiction, or access to the federal courts. So, would you agree then... I know you didn't like my first question, but let me try another one. If this bylaw had said all claims must be presented either in the Court of Chancery of the State of Delaware or in the Federal District Court for the District of Delaware as a form selection clause, that would have been unobjectionable, I take it? Yes, Your Honor. And that's because it would have preserved federal claims and the federal court's jurisdiction. Okay. Let me ask you, you said in your brief that the bylaw unreasonably and unjustly violates federal and Delaware law, and I'm not sure why it's not enough just to say that the bylaw violates federal law. It doesn't matter whether it's reasonable or unreasonable, and it doesn't matter whether it violates Delaware law. Your Honor, I agree with that statement. As a practical matter, I think this case can be decided based on federal law. That's what should be analyzed. In the briefing below, defendants raised the issue of whether the clause was enforceable under Delaware law. So, on appeal, we address that as well. But I think... I don't know that we need to get into it, but if we were to, what differences between Delaware law and Section 14a are important to you? Yes, Your Honor. So, there are very important differences to us. And that's because to begin with, the claims themselves have different substantive elements. For example, as we in the briefs below, a 14a claim is subject to a negligence standard, whereas a breach of fiduciary duty, breach of disclosure claim is subject to bad faith, very different standards. But it goes beyond that, Your Honor. A 14a claim has a whole body of federal law that has been enacted pursuant to the SEC's authority. And so, it's a very different body of law that is entailed. You have this whole statutory framework. You have rules and regulations. And I would also add... Ms. Gilden, I'm sorry to break in here, but you are assuming, as your brief does, that federal law applies to the decision by Boeing whether to sue its directors, that is to the derivative suit. Your brief is explicit that you're relying on Kamen against Kemper Financial. In Kamen against Kemper Financial, which was another derivative suit to enforce a proxy disclosure requirement, this court had assumed that federal law applied and the justices didn't say that. In fact, they reversed us nine to nothing for making that assumption. And they held that Delaware law covers the derivative action at stake in Kamen. What I want to know is why Kamen doesn't say that Delaware law covers the derivative aspects of this suit, even though federal law would govern if Boeing sued its directors. So, Your Honor, for purposes of determining demand and demand futility, courts in this circuit do look to Delaware law. It's not courts in this circuit, counsel. It's not courts in this circuit. The Supreme Court held that Delaware law governs the derivative aspects of the suit, and in particular in Kamen, whether demand was required or excused. I don't understand why the other aspects of derivative litigation are not equally governed by Delaware law. And I want to be clear, I'm asking a question about Kamen, not about what the district courts in the Seventh Circuit think. Yes, Your Honor. Let me try again. So, demand is a procedural element of the derivative action. And for purposes of demand, courts, as the Supreme Court noted, as Your Honor noted, look to Delaware law. But the substance, the substantive claim itself, a 14A claim, that is governed by federal law, that's governed by federal rules and regulations. I'm going to try once more. It is clear that if Boeing decides to bring its own suit, that is if the derivative claim succeeds, that the claim by Boeing against the directors would be governed by federal law. The question I'm asking is why federal law governs the decision by Boeing whether to sue the directors, that is the derivative aspect. There's nothing in Section 14 that requires a corporation to sue its directors. That, I should think, depends on the state law, whether the company, whether anybody has violated the duty of care or the duty of loyalty established under state law. That's what makes this a derivative claim. If you really want a federal claim, you bring a direct claim, which of course is permitted under Section 14. Well, Section 14 does permit a shareholder to bring a claim derivatively, Your Honor. And it is very possible to do that. Substantively, the test, you know, you were asking, like, why is it unreasonable? I think this goes back to Brennan. And it goes back to determining whether or not the form provision... Let me try one more way. The pages, the only citation in your brief for the proposition that federal law applies is Cayman. And the pages to which your brief cites in Cayman say the opposite. They say that state law applies to the derivative aspects of the claim. Is there some other decision in the Supreme Court holding that whether derivative litigation is permitted or authorized or to go forward, that that is governed by federal law? Well, the Borak case noted, the Supreme Court said that a 14A claim can be brought both derivatively and as a direct claim. The aspect, though, Your Honor, and that, you know, I want to stress is that the derivative aspect that is governed by Delaware law is solely as to demand. It does not govern a 14A claim. It does not cover... And let's say a shareholder brought a different claim and brought a claim under a different statute. The Delaware law would govern, again, the procedural aspect. Is demand satisfied? Is demand futility established? But the substantive elements of the claim itself would be, again, brought under the federal statutory scheme involved. And that would be the body of law that would govern. Your Honor, I am looking at the time and I'm happy to answer additional questions. I have reserved, though, a portion of my remaining time for rebuttal. But I'm happy to continue as well. But I would like to have some... I hear no current questions, so you can reserve the rest of your time. Mr. Rabinowitz. Thank you, Your Honor, and may it please the court. After the two accidents involving Boeing's 737 MAX planes, Boeing shareholders filed seven derivative actions across three different courts. This type of splintered and duplicative litigation arising from the same events is inefficient. Or at the least, a corporation's board of directors is within its business judgment to conclude that it is. But, you know, the question here isn't really efficiency. I think the question is how one works with this bylaw, which in this particular application completely excludes a federal claim, the claim under the 1934 Act. I will say that, from my perspective, it seems that this bylaw would be unobjectionable for any claim that falls within the jurisdiction of the Delaware Court of Chancery, which includes the vast majority of federal claims that one could imagine, plus, you know, of course, all state law claims. So the 33 Act, Title VII, you know, I can imagine all sorts of trouble a corporation might find itself in where the state courts are absolutely competent to hear a case. But it appears that Delaware law itself has made a decision not to make, not to force people to this choice of losing their federal claim in Section 115. So sort of jumping over the question Judge Easterbrook was asking, you know, let's look at Delaware law. What does it say about this kind of claim? And I'm not so convinced, actually, that the doom and gloom you predict about litigation all over the country would even occur since there are 1404A transfers. You could change your bylaw to admit the federal courts in Delaware, which it seems to me would be a fairly routine forum selection clause at that point. But I'm not at all persuaded that just efficiency reasons tell us where this case belongs. And I'm concerned that the court below didn't appreciate the guidance that Delaware itself was giving it. Yeah, well, let me see if I can take a run at that, Judge Wood. So let me start with Delaware law because it seems like that's your starting premise. The Boeing bylaw, as written, is authorized by Delaware law. And I'm not saying it isn't. I can see all sorts of perfectly routine applications of this bylaw. It's just that there's an application that doesn't seem to work. So I certainly wouldn't take the position there was a facial invalidity problem with this Delaware bylaw. It's an as-applied. That's right. And as-applied, the test then is Bremen. And under the Bremen test, this court's decision in Bonnie shows the way. I don't think Bonnie governs this, though. I mean, we have a very, well, we have a couple of differences between this and Bonnie, one of them being the existence of a choice of law clause, choice of forum and choice of law clauses are different clauses. You can have one and not the other. And I don't think that we would consider it meaningless. Well, it's not meaningless, Your Honor, but it also wasn't what the Bonnie decision turned on. So Bonnie's decision, at least the part that's relevant to the public policy argument, which is the only argument the court is pursuing here, turned on, not on the choice of law provision, but on the forum selection provision. That's what it was considering. And what it considered was whether that forum selection provision violated federal public policy. Are you saying then you think Delaware is irrelevant? Because I'm thinking about 115 and 109. I'm thinking about the very well-established principle of statutory construction that the specific prevails over the general. I just don't see Bonnie as quite the match for this case that you are advocating. Yeah, let me start again, Your Honor, then with Delaware law. So in terms of the difference between section 109 and section 115, and thinking that the specific might control over the general, the Delaware Supreme Court has just suggested in the Salzburg versus Shabacookie case decided earlier this year, it held that section 109 and its parallel section 102, which applies to articles of incorporation, are broader grants of authority than section 115. In other words, section 115 was not intended to modify section 109. So in other words, section 115 is meaningless. Not meaningless, Your Honor. It's simply a different grant of authority to the corporations. No, but it's meaningless. If you can do anything you want in a bylaw, then you don't need section 115. I don't think Delaware Supreme Court said quite as much. It did not say that, but it did say that section 115 was not intended to rein in section 109B. There is prohibitory language also in section 115. And there's been discussion amongst, I think, in the legislative history that section 115 was intended to codify the decision of the Delaware Court of Chancery in the Boilermakers decision. But nonetheless, what Salzburg did, Your Honor, was say that there are a category of bylaws and articles of incorporation that do not fit within section 115, but nonetheless are authorized by section 109. And in fact, we have that here. In context, though, didn't the Delaware Supreme Court give some weight to the fact that the Forum Selection Clause provided jurisdiction to a federal court for federal claims? Well, Your Honor, for the particular bylaw at issue or article at issue there, but the analysis indicating that section 109 and section 102 were not modified by section 115 is what's important in terms of dispatching the plaintiff's argument here that somehow because the bylaw was not authorized by section 115, that means it also was not authorized by section 109. That argument is not consistent with the Supreme Court's decision in Salzburg. It just has no legs after that decision. Now, Mr. Rabinowitz, could you address the language in section 29A of the Exchange Act on the contractual waiver being prohibited? The anti-waiver language, Your Honor? Yes. And the way I would address that would be, again, by looking to this court's decision in Bonney. So the plaintiff's argument here is a per se argument. Why would you look to this court's decision in Bonney rather than the Supreme Court's decision in Shearson American Express against McMahon? That case holds that Securities Exchange Act claims can be arbitrated. And you've told us that this forum selection clause is equivalent to an arbitration agreement. Then you just get kicked out to the Supreme Court's decision in Shearson, do you not? Well, Your Honor, I think that arbitration is a little different than this. So I do think Bonney is the right decision. I think the Supreme Court's decision in Shearson is suggestive. Suppose you forget about Bonney, as Judge Wood suggested. What's the bearing of Shearson? Well, the bearing in Shearson, Your Honor, is it rejects a per se argument that if the effect of an arbitration provision or a forum selection provision, if you'll have it that way, is to forbade a plaintiff from filing their Exchange Act claim in federal court. That is not a per se violation of the anti-waiver provision of the exchanging. But, you know, important to both the Shearson case and the Mitsubishi against Soler-Chrysler-Plymouth case, another arbitration case, in that instance, obviously dealing with antitrust, another area understood to be exclusive to the federal courts. But the both of those decisions proceed on the assumption that the arbitrators are fully capable of adjudicating the statutory claim that is now not going to be brought in the courts. The court makes a point of saying that, certainly in Mitsubishi and also Shearson. So it means that the anti-waiver provision shouldn't get in the way of the party's free choice of an alternative forum for adjudicating something. But here we don't have an alternative forum. Here we have a complete exclusion of the claim and the substitution of the far more restrictive fiduciary duty claim that Delaware law recognizes. That's quite different from what was going on in either Shearson or Mitsubishi. Well, Your Honor, I respectfully would disagree at least somewhat. I would say it's a little bit different. I think Bremen provides the outline of the court's analysis here. And what it provides would be to look to whether— Bremen is just a contractual case. People have been arbitrating contractual claims since the Middle Ages. Well, that's right, Your Honor. But under Delaware law, a bylaw is part of the contract between the corporation and its stockholders. This is not something that Boeing did to the stockholders. That's how Delaware law considers it. And this is a creation of Delaware law. And so it is considered as a contractual provision, or at the very least a binding obligation, as Delaware law would have it. And the shareholders, if they don't like the bylaw, can repeal it. They have it. And so the question then is not, is the plaintiff able to file a claim that is titled an Exchange Act claim? The title's not important. What's important is, does the plaintiff have an avenue to vindicate its substantive rights? Not exactly in the contours of the Exchange Act necessarily, but a forum in which to vindicate its substantive rights. So how different is too much? I mean, at some point, at some point, I mean, we cited in Bonnie Lloyd's, you know, there were all sorts of remedies under British law, etc. You would agree, I assume, that at some point, there really is no analogous or even second best or third best approach to the problem. That's right. Yes, it's a balancing test. That's why it's subject to abusive discretion here. And that's something for the trial court in each instance to consider. No, this is a question of law. What's the scope of Delaware law? What's the scope of Section 14? That can't vary from district court to district court. I think it absolutely can. I think it can, Your Honor, because it's a weighing of public policy interests. That's what this court held in Mueller. And I think that's the right way to consider it. It wouldn't matter to the outcome of this case because the district court was both correct and within its discretion. But any weighing of public policy, which is what the district court has to do when comparing the forum selected to federal forum, and weighing it in that sense, I do think that's the right way to conceive of it. What do you do with footnote 19 in the Mitsubishi case, which says, in essence, if the choice of law and choice of forum clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy. I think the Exchange Act and Yeah, I think, Your Honor, that would be a problem in an arbitration context. I think it's not in a context where the plaintiff has an avenue, a legal avenue in court to to file its claim and try and vindicate the substantive rights which do vindicate the Exchange Act. The other aspect of anti-waiver, Your Honor. Do you see any difference between the negligence standards of Section 14a and the standards of Delaware law? It's a difference, Your Honor, but, and I hate to invoke Bonnie yet again, but Bonnie does show that. Bonnie is in a cluster of cases involving Lloyd's investors based in London, transacted in London, agreeing to British law. This is long before Morrison and Australia Bank dealing with the international scope, but they're all about the international dimensions of those transactions. Here we're talking about something that's purely in domestic securities markets. The Ninth Circuit's decision, Your Honor, in Sun, which was only two years ago, did apply all that analysis in an analogous context here, which is to a purely domestic transaction. I think it does show the way that although those cases were considering international transactions. You think there would be a problem if the Articles of Incorporation or bylaw stated, we, the investors, waive any opportunity to bring derivative claims under Section 14, and we'll litigate only direct claims under Section 14. Any problem? I think, Your Honor, it would have to go on a case-by-case basis where the trial court in the first instance, at least, would have to... Assume the answer has to be either yes or no, rather than maybe. Do you think the answer is yes or no? I don't think it's a maybe, and I don't think it's a yes or no, Judge Easterbrook. I think the court would have to look at the particular claim being asserted. Not all 14a claims are like. There's lots of different implementing regulations. If it was a 14a9 claim, then I think it would be appropriate. If it was 14a writ large, I think the court would have to look at the particular claim being asserted, and whether Delaware or whichever state or whichever forum was being selected, whether it was capable of vindicating those substantive rights. So I do think it would be a case-by-case basis, Your Honor. With that, if there are no further questions. Thank you very much. Thank you. Ms. Gildan, anything further? Yes, Your Honor. Sorry, I had to turn my sound back on. Yes, so I want to go back over the enforcement of this bylaw. It's quite clear that there are strong federal interests in terms of protecting the securities markets, in terms of enforcing federal jurisdiction, that certainly outweigh any effort to, if you will, kick the case to Delaware, which does not have, I think, all the rules and regulations that come into play when a company like Boeing files with the SEC a proxy statement that is then disseminated to investors and used to solicit their votes on things like the director's executive compensation, excuse me, and shareholder proposals. And so these are very important policy issues. The SEC in, excuse me, Your Honor, I have a little something in my throat. I'm recovering from a cold. So in terms of what Congress enacted, the Securities and Exchange Act, it did it, viewed it as an issue of paramount national importance. And these are overriding issues that we're dealing with. The company here put out a false and misleading proxy statement. That false and misleading proxy statement was governed by the SEC's rules and regulations as to what information needs to be included in it. Rule 14A9 governs when a proxy statement is false and misleading, that actions can be brought. And so there's this whole body of law that exists in connection with a 14A claim in connection with the Securities Act, which reflects Congress's view of the importance of this area of law. Plus, I also want to stress that Congress made it very clear that it viewed Securities Exchange Act claims as jurisdictionally belonging solely in federal court. And it did this because it wanted a uniform body of law. And to ensure that the case, any cases that were brought would remain in federal court with Thank you. Thank you, Ms. Gildan. Thank you, your honors. On behalf of Seafarers, we ask that this court reverse and remand the decision. The case is taken under advisement.